IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CABINET DISTRIBUTION CENTER LLC,  )
                                  )
            Plaintiff,            )
                                  )  Case No. 24 C 673
      v.                          )
                                  )  Judge Joan H. Lefkow
SECURA INSURANCE COMPANY,         )
                                  )
            Defendant.            )

**OPINION AND ORDER**

Cabinet Distribution Center LLC ("CDC") filed this action against SECURA Insurance Company in the Circuit Court of Cook County, bringing two claims for breach of an insurance contract and seeking monetary relief based on storm damage to a CDC industrial building insured by SECURA. SECURA removed to this court[1] and now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the motion (dkt. 13) is granted in part and denied in part.

**BACKGROUND**

CDC alleges that its commercial property located at 2180 S. Wolf Road, Des Plaines, Illinois (the "Property") incurred wind, hail, and other storm damage on or about July 23, 2022. (Pl.'s Compl., dkt. 1-1 ¶¶ 1–2, 6.) The Property was covered by a commercial insurance policy and a renewal policy, both of which were issued by SECURA (collectively, "the Policy"). (*Id.* ¶¶ 4, 7–8.) The Policy covered "direct physical loss of or damage to Covered Property … caused by or resulting from any Covered Cause of Loss." (*Id.* ¶ 10; Pl.'s Ex. A, dkt. 1-1 at 19.) The Policy

---

[1] This court has subject-matter jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446. Venue is proper under 28 U.S.C. §§ 93, 1391.

limited the CDC's ability to bring legal action against SECURA to a two-year period following the date on which covered property damage occurred. (Pl.'s Ex. A, dkt. 1-1 at 17.) Furthermore, the Policy contained a provision that allowed either party to demand an appraisal in the event of a disagreement over the value of a claimed loss:

> If [SECURA] and [CDC] disagree on the value of the property or the amount of loss, either [party] may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

(*Id.* at 27.)

On August 8, 2022, CDC submitted a claim to SECURA for wind and hail damage to the Property caused by a storm on or about July 23, 2022. (Pl.'s Compl., dkt. 1-1 ¶ 11.) In January 2023, SECURA reported to CDC that the expert SECURA had retained to assess the storm damage had found no evidence of hail-related damage. (*Id.* ¶¶ 12–14.) SECURA then tendered a check to CDC in the amount of $79,763.84 for all non-hail-related damage SECURA had found to be covered by the Policy. (*Id.* ¶ 15.)

As this amount was insufficient to make repairs to what CDC viewed as the covered damages, CDC demanded appraisal. (*Id.* ¶¶ 15–16.) At SECURA's behest, CDC signed a "mutual agreement between insured and insurer for submission to appraisers" (the "Agreement"). (*Id.* ¶ 17; Pl.'s Ex. B, dkt. 1-1 at 58.) The Agreement stated:

> It is hereby agreed … that a disagreement exists as to if the wind damages that were sustained would warrant in full replacement of roof membrane as a result of a wind event loss … . We will not be taking the any [*sic*] hail damage into consideration under this appraisal as any damaging hail damage occurred outside of the statute of limitations.

(Pl.'s Ex. B., dkt. 1-1 at 58.) On the separate signature page where CDC's representative signed, the Agreement stated:

> By signature below, both the insured, public adjuster and insurer are agreeing they have discussed the scope of the appraisal and are freely entering this agreement to ensure there is no later dispute as to the scope of this appraisal. Both parties hereby ask the appraisers and umpire to evaluate damages within the scope state [*sic*] above.

(*Id.* at 59 (emphasis omitted).)

The appraisal process played out and estimates were submitted to an umpire. (Pl.'s Compl., dkt. 1-1 ¶ 18.) CDC's appraiser estimated covered damages to be $1,890,128.37. (*Id.* ¶ 21.) On August 24, 2023, the umpire issued a decision determining that the actual cash value and replacement cost value was $307,470.97. (*Id.* ¶ 19.) Then, on September 6, 2023, the umpire reduced the award amount to $217,632.72. (*Id.* ¶ 20.) That award would allow for the replacement of only 125 of the 600 squares making up the roof of the Property. (*Id.* ¶ 21.) CDC filed its complaint on December 22, 2023. The complaint asserts that the umpire committed a gross mistake of fact or law both in the original award and in the later reduction of the award. (Pl.'s Compl., dkt. 1-1 ¶ 21.) The complaint further asserts that the Agreement signed by CDC's representative either does not bar CDC "from suing and recovering for storm damages it suffered … that were not the subject matter of the appraisal" or is, at the very least, ambiguous on that point. (*Id.* ¶ 17.) On these allegations, CDC brings two claims for breach of contract. Count I alleges that SECURA has not paid CDC for all covered losses caused by wind damage (*i.e.*, damage within the scope of the appraisal). Count II alleges that SECURA has not paid CDC for all covered losses caused by non-wind damage (*i.e.*, damage beyond the scope of the appraisal). (*Id.* ¶¶ 22–39.)

SECURA moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 13.) SECURA argues that Count I must be dismissed because CDC is bound by the umpire's award,

which does not suffer from either gross mistake of fact or law. (*Id.* at 3–6.) As to Count II, SECURA contends that CDC waived its right to pursue a claim for non-wind damage when it entered into the Agreement defining the scope of the appraisal. (*Id.* at 6.)

## LEGAL STANDARD

### I.    Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In short, the allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In ruling on 12(b)(6) motions, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Taha* v. *Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020).

## ANALYSIS

### II.   Breach of Contract

To prevail on a claim for breach of contract in Illinois, a plaintiff must plausibly allege and eventually prove these facts: "(1) the contract existed, (2) the plaintiff performed the conditions precedent required by the contract, (3) the defendant breached the contract, and (4) damages." *Smart Oil, LLC* v. *DW Mazel, LLC,* 970 F.3d 856, 861 (7th Cir. 2020). *See also Ivey* v. *Transunion Rental Screening Solutions, Inc.*, 215 N.E.3d 871, 877 (Ill. 2022). The first two elements are not at issue.

### A. Count I: Wind Damage and the Umpire's Award

SECURA argues that Count I must be dismissed because the insurance policy binds CDC to the umpire's award, which is facially valid and therefore not subject to court review. (Dkt. 13 at 3.) In response, CDC points to an exception to the general rule that courts will not disturb an umpire's award. (Dkt. 17 at 4–6.) CDC contends that this exception applies in this case and that the court should therefore review the umpire's award and set it aside. (*Id.*) SECURA's argument is more persuasive.

"In the insurance context, appraisal is most often used to determine the amount of the loss sustained under a property insurance policy." *FTI Int'l, Inc.* v. *Cincinnati Ins. Co.*, 790 N.E.2d 908, 910 (Ill. App. Ct. 2003) (citation omitted). Illinois courts treat an appraisal clause in an insurance policy as "analogous to an arbitration clause[,]" *Travis* v. *Am. Mfrs. Mut. Ins. Co.*, 782 N.E.2d 322, 324 (Ill. App. Ct. 2002), and just as Illinois courts generally will not disturb arbitration awards, Illinois courts generally will not interfere with an appraiser's valuation, *Bailey* v. *Timpone*, 389 N.E.2d 1193, 1196 (Ill. 1979) ("When, as here, the parties agree to have value affixed by an appraisal, they must abide by their own agreement.") (cleaned up) (quoting *Hirt* v. *Hervey*, 578 P.2d 624, 626 (Ariz. Ct. App. 1978)). The parties to an insurance contract are therefore generally "not entitled to a new determination by the courts." *Hirt*, 578 P.2d at 626. Illinois courts have, however, recognized an exception to this general rule: courts may vacate an appraisal award if, but only if, a gross mistake of fact or law is "apparent on the face" of the award. *See Spencer* v. *Ryland Grp., Inc.*, 865 N.E.2d 301, 304 (Ill. App. Ct. 2007) ("Even where an arbitrator commits gross errors of judgment in law or a gross mistake of fact, a court should not vacate an arbitration award unless the mistakes or errors are apparent on the face of the arbitration award."). *See also Hayes* v. *Ennis,* 662 N.E.2d 910, 913 (Ill. App. Ct. 1996) ("An

award will not be set aside due to gross errors in judgment in law or gross mistakes of fact by the arbitrator unless the errors or mistakes are apparent on the face of the award.").

CDC does not dispute that it submitted its wind-damage claim to binding appraisal; CDC argues, rather, that the allegations demonstrate "error in the umpire's decision-making process." (Dkt. 17 at 5.) More specifically, CDC argues that it has plausibly alleged "that the umpire made a gross mistake of fact by not taking into account the substantial moisture penetration in the roof," rendering the umpire's award "palpably inadequate." (*Id.*) Moreover, CDC contends, "the umpire ignored the fact that the roof had more than 600 squares" and therefore called for the installation of only 125 new squares. (*Id.*) The umpire should have known that repairing only part of the roof would "violate[] sound roofing practices and manufacturer's specifications." (*Id.*)

The problem for CDC is that, even if the umpire erred, none of these alleged errors appears on the face of either the umpire's original award, dated August 24, 2023, or the umpire's revised award, dated September 6, 2023. Start with the roof squares. While the awards show that the umpire determined that 125 squares needed to be removed and replaced, it does not show that another 475 squares were "ignored." (Pl.'s Ex. C, dkt. 1-1 at 63–73; Pl.'s Ex. D., dkt. 1-1 at 74–84.) Whether those other squares exist and whether they were or were not taken into account are questions of extrinsic evidence at which the court is not permitted to look. The same is true of the "substantial moisture penetration" CDC claims the umpire failed to consider. Since there is no discussion of moisture penetration in the umpire's awards, the court cannot know whether the umpire erred with respect to moisture penetration without looking beyond the four corners of the awards. Again, the court's analysis cannot stray beyond that which is "apparent on the face of the award." *Hayes,* 662 N.E.2d at 913.

CDC argues, however, that the discrepancy between the CDC appraiser's estimate of $1,890,128.37 and the umpire's award of $217,632.72 is "so great as to create an issue on the question of mistake." (Dkt. 17 at 6.) And, if that discrepancy alone were not enough to allow a reasonable inference of gross error, CDC argues, "the fact that the umpire reduced the award from $307,470.97 to $217,632.72" further casts doubt on the fairness of the award. (*Id.*)

To support that such inferences of unfairness may be permissible under Illinois law, CDC cites *Hetherington* v. *Continental Insurance Company of New York*, 37 N.E.2d 366 (Ill. App. Ct. 1941). There, an insurer had issued a policy on a vehicle that was later damaged in a collision. *Id.* at 367. As in this case, an appraisal clause allowed the parties to have their own appraisers draw up estimates and, if they disagreed, submit those estimates to a disinterested umpire. *Id.* The appraisers agreed that the damage was $829, so there was no need to turn to an umpire. *Id.* at 367–68. The insurer disagreed, however, claiming that the vehicle could be repaired and restored for only $217.38, and refused to pay. *Id.* The insured sued, and the insurer counterclaimed, asking to have the appraisal award set aside by reason of fraud. *Id.* at 368. The trial court struck the counterclaim and refused to allow evidence of the insurer's estimate at trial. *Id.* On appeal, the Illinois Appellate Court recognized the general rule that appraisals are "binding upon the parties" but noted that "courts will set aside an award wherever it clearly appears that there has been fraud, misconduct or palpable or gross error or mistake." *Id.* The court further explained:

> Although the mere fact that an award is different in amount from what the court would have given[] will not in itself necessitate setting it aside, it is also true that if the amount is palpably excessive or inadequate an inference of fraud or mistake may be raised. [I]t is said that a court will not substitute its own judgment for that of the appraisers or set aside the award for inadequacy or excessiveness, unless it is so palpable and manifest as to indicate corruption or partisan bias on the part of the appraisers. … [W]here the award is inadequate, … the inadequacy must be so strong, gross, and manifest that it would be impossible to state it to a man of common sense without producing an exclamation at the inequality of it.

*Id.* at 368–69 (citations omitted). With those guardrails in place, the court concluded that "in the case before us the marked difference between the amount found by the appraisers … and the amount admitted under the pleadings as the actual loss and damage … was so great as to at least produce such an exclamation at the unfairness of the award and to create an issue on the question of fraud and mistake." *Id.* at 369.

On its face, *Hetherington* appears to support CDC's position, but there are several reasons why that support is superficial. First, while the court in *Hetherington* spoke of both fraud and mistake, the facts squarely centered on fraud. In contrast, CDC's allegations here sound not in fraud, but in mistake. Next, there is the factual discrepancy between the cases. In *Hetherington*, the two appraisers *agreed* on the amount of damage, but in this case, the two appraisers *disagreed*, sending the estimates, as well as the final decision, to an umpire. This distinction is significant, for the Policy here states that "[a] decision agreed to by any two [of the two appraisers and the umpire] will be binding." Thus while CDC's appraiser estimated the covered damages at $1,890,128.37, both SECURA's appraiser and the umpire concluded that the damages were only $217,632.72. In other words, in this case there was a difference of opinion resolved by a majority where in *Hetherington* there was unanimity from the outset. Taking the allegations in their totality, there are too many differences between *Hetherington* and this case for this court to say, as the court in *Hetherington* did, that the discrepancy between the award and the insured's estimate is "so great as to at least produce … an exclamation at the unfairness of the award." As important, even if the alleged "inadequacy" here were "so strong, gross, and manifest that it would be impossible to state it to a [person] of common sense without producing an exclamation at the inequality of it[,]" *Hetherington*, 37 N.E.2d at 369, the *Hetherington* court does not appear to have applied the modern standard, that the mistake must be "apparent on the

face of the award." *Hayes,* 662 N.E.2d at 913. Perhaps that is why, in the 83 years since *Hetherington* was decided, the decision has been cited by Illinois courts only once for the general proposition that "courts may set an award aside if it is clear that there has been fraud, misconduct or palpable or gross error or mistake[.]" *Gen. Cas. Co.* v. *Tracer Indus., Inc.*, 674 N.E.2d 473, 474 (Ill. App. Ct. 1996). For these reasons, the court finds insufficient support in *Hetherington* for CDC's position and declines to infer that the umpire committed a gross mistake of fact either in arriving at the initial award of $307,470.97 or in reducing that amount to $217,632.72.

As CDC has not plausibly alleged that a gross mistake of fact or law appears on the face of the umpire's award, the court will neither review the propriety of that award nor set it aside. Count I is therefore dismissed without prejudice.

### B. Count II: Non-Wind Damage

SECURA argues that Count II must be dismissed because CDC waived its right to pursue a claim for non-wind damage when its representative signed the Agreement defining the scope of the appraisal. As SECURA sees it, when CDC "expressly conceded that the appraisal [would] not consider any hail damage because such damage 'occurred outside of the statute of limitations,'" CDC "intentionally relinquished its right to pursue its claim for non-wind damage caused by the storm." (Dkt. 13 at 6.) This is so, SECURA contends, because "the Policy entitles parties to a single appraisal proceeding where the insured is required to raise all claimed damages resulting from the alleged covered cause of loss." (*Id.*) In response, CDC argues that the Agreement defining the scope of the appraisal is, at best, ambiguous. (Dkt. 17 at 6–7.)

At the threshold, the court rejects SECURA's contention that the Policy allows for only one appraisal per covered event. SECURA does not cite any provision in the Policy to support

this contention, and the court will not scour the Policy looking for one.[2] More to the point, if the Policy did, in fact, limit the insured to a single appraisal for any covered event, there would be no need to argue waiver.

Turning to that argument, the court finds that CDC did not waive its right to further appraisals when it entered into the Agreement defining the scope of the wind-damage appraisal. Nor did CDC waive its right to litigate when it entered that Agreement.

Waiver is "an intentional relinquishment of a known right." *Gallagher* v. *Lenart*, 874 N.E.2d 43, 53 (Ill. 2007) (citations omitted). Waiver "must be proved by the party asserting [it] by clear, unambiguous evidence." *Illinois Rockford Corp.* v. *Dickman*, 520 N.E.2d 1184, 1187 (Ill. App. Ct. 1988). In the insurance context, a policy must "clearly provide that the plaintiff is giving up his right to file suit by seeking an appraisal[.]" *DeGroot* v. *Farmers Mut. Hail Ins. Co. of Iowa*, 643 N.E.2d 875, 876 (Ill. App. Ct. 1994). *See also Stratford W. Homeowners Ass'n* v. *Country Mut. Ins. Co.,* 788 N.E.2d 342, 343–44 (Ill. App. Ct. 2003) ("Any waiver of the right to file suit must be clear and unambiguous.").

Here, the relevant language in the Agreement does not meet these standards. The Agreement twice refers to "*this* appraisal," once at the start of the Agreement ("We will not be taking the any [*sic*] hail damage into consideration under *this* appraisal…") and again on the signature page (parties "are freely entering this agreement to ensure there is no later dispute as to the scope of *this* appraisal"). (Pl.'s Ex. B., dkt. 1-1 at 58–59 (emphases added).) To be sure, at

---

[2] Oddly, SECURA cites a decision from the District of Minnesota, *Creekwood Rental Townhomes, LLC* v. *Kiln Underwriting Ltd.*, 11 F. Supp. 3d 909 (D. Minn. 2014), to support this contention, but that case does not resolve the question of fact presented here, whether the Policy CDC purchased entitles CDC to one, and only one, appraisal. In *Creekwood Rental Townhomes*, the court was able to resolve a similar question based on the language of the insurance policy under consideration, *id.* at 929, but SECURA has neither cited any clause in the Policy at issue here that might do the same work nor constructed any argument to the same effect.

one point on the signature page, the Agreement also uses the phrase "*the* appraisal" (parties "are agreeing they have discussed the scope of *the* appraisal …"). (*Id.* at 59 (emphases added).) While it might be reasonable to infer from the phrase "the appraisal" that the Agreement contemplates only one appraisal, it is just as reasonable to infer from the twice-used phrase "this appraisal" that multiple appraisals are possible. This is so because "*this* appraisal" may be implicitly juxtaposed with *some other* appraisal. Based on these facial ambiguities, the court cannot accept SECURA's argument that CDC waived multiple appraisals. More holistically, nothing in the Agreement's text provides "clear, unambiguous evidence" that CDC intentionally relinquished its rights either to a separate appraisal regarding non-wind damage or to sue SECURA for breach of contract. It might be reasonable to infer that CDC intentionally relinquished its rights to further appraisals of wind damage, but more than that the Agreement's language cannot bear.[3]

Furthermore, to the extent that SECURA means to suggest that CDC's submission to a binding appraisal process itself constitutes waiver of the right to sue, such an argument is simply illogical, for "submitting to a binding appraisal process does not foreclose [an insurer] from denying [a] claim based upon the provisions of [an] insurance policy, just as submitting to [a] binding appraisal process does not foreclose [an insured] from bringing suit based upon an improper denial of [the insured's] claim." *Courtyards at Prairie Fields Condo. Ass'n* v. *W. Bend Mut. Ins. Co.,* No. 22 C 4854, 2023 WL 6198818, at *3 (N.D. Ill. Sept. 22, 2023).

---

[3] SECURA also suggests (it is clearly not an argument) that CDC, by acknowledging in the Agreement that "hail damage occurred outside of the statute of limitations," waived its right to bring this suit. (Dkt. 13 at 6.) Even if this argument were not waived as perfunctory and undeveloped, *see United States* v. *McGhee*, 98 F.4th 816, 825 (7th Cir. 2024) ("Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (citations omitted), the court would not be persuaded, for the assertion that "hail damage occurred outside of the statute of limitations" is clearly in error. The storm occurred on or about July 23, 2022, and the parties entered into the Agreement sometime in early 2023. Moreover, the Policy allows legal action against SECURA to be brought for at least two years following SECURA's denial of a claim, to say nothing of the event causing the damage. This statement in the Agreement was, therefore, clearly a product of the parties' mutual mistake.

In short, on no theory can the court find that CDC waived its rights either to additional appraisals or to bring legal action. The court therefore denies SECURA's motion to dismiss Count II.

## **CONCLUSION AND ORDER**

For the reasons discussed above, the motion to dismiss (dkt. 13) is granted in part and denied in part. Count II is not dismissed, and Count I is dismissed without prejudice. CDC is given until September 16, 2024, to file an amended complaint. If CDC does not replead Count I, the dismissal will convert to a dismissal with prejudice on September 17, 2024.

Date: August 26, 2024

Joan N. Lefkow

U. S. District Judge Joan H. Lefkow