**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CABINET DISTRIBUTION CENTER LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 24 C 673 |
| v. | ) |
| | ) Judge Joan H. Lefkow |
| SECURA INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**<u>OPINION AND ORDER</u>**

Cabinet Distribution Center LLC (CDC) brings a breach of contract claim action against

SECURA Insurance Company (SECURA) based on SECURA's refusal to pay for non-wind

damage caused by a storm that struck CDC's property in 2022.[1] Before the court is SECURA's

motion for partial summary judgment. For the reasons stated below, SECURA's motion (dkt. 52)

is denied.

**<u>BACKGROUND[2]</u>**

On July 23, 2022, a wind and hail storm struck CDC's commercial property on South

Wolf Road in Des Plaines, Illinois ("the Property"), causing significant damage to the Property's

roof. At the time, the Property was insured by SECURA under a commercial protection

insurance policy (the "Policy"). The Policy provided coverage for "direct physical loss of or

---

[1] This court has subject matter jurisdiction under 28 U.S.C. § 1332(a). Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

[2] The court relies on the factual assertions and objections contained in the parties' Local Rule 56.1 submissions. N.D. Ill. L.R. 56.1. Properly supported material facts "are admitted unless the non-movant specifically controverts them in its factual statement, shows them to be unsupported, or demonstrates that reasonable inferences can be drawn in its favor." *Hinterberger* v. *City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020) (quotation omitted).

damage to" the Property that resulted from covered events. (Dkt. 61 ¶ 7.) The Policy also required that any legal action be brought against SECURA within two years of the loss, a time period to be "extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part." (Dkt. 61-1 at 2.) The Policy allowed CDC to make a demand for an appraisal of damages from covered events. It included no language requiring only one appraisal per covered event.

CDC submitted a claim to SECURA for wind and hail damage to the roof of the Property caused by the storm. SECURA then retained Apex Claims Management to perform an independent adjustment on CDC's claim, and Apex Claims Management assigned Kamil Mozwecz as independent adjuster for the claim. Mozwecz performed an inspection of CDC's roof on August 12, 2022, during which he uncovered severe damage to the roof membrane caused by the storm. CDC also had a public adjuster, Tymoteusz Czerepak, separately investigate its claim.

In a loss report for Apex Claims Management that addressed both wind and hail damage, Mozwecz identified visible fractures on the underside of the roof membrane that were caused by hail, "[s]ignificant sized spatter marks … on every rooftop unit," and a torn roof membrane in the north-west corner of the roof. (Dkt. 65 ¶ 15.) He estimated the replacement cost resulting from the wind and hail damage at $1,170,348.53.[3] At his deposition, Mozwecz later testified that the wind damage was observed on one of the corners of CDC's roof while the hail damage was observed in multiple areas of the roof. He also testified that he only included line items for covered losses in his replacement cost estimate.

---

[3] SECURA only disputes this amount as not accounting for depreciation, otherwise it admits that this was the total estimate provided by Mozwecz.

The separate investigation by Czerepak similarly found that the roof suffered both hail and wind damage during the storm.[4] Like Mozwecz, he reported that severe wind had caused damage to the roof by lifting the roof membrane or parts of the roof. His investigation also uncovered multiple, clear instances of hail damage, including spots where the roof's coating was damaged. This damage to the roof's coating indicated damage to the roof's membrane. According to Czerepak, the entire roof needed to be replaced following the storm "irrespective of whatever happened with the hail," since whether the cause of the roof damage was hail or wind, each cause would yield the "same end result." (Dkt. 61 ¶ 21.)

On January 13, 2023, SECURA tendered a check to CDC in the amount of $79,763.84 for non-hail related damage to the roof. CDC then demanded appraisal pursuant to the Policy on February 3, 2023. SECURA accepted CDC's demand for appraisal in a response letter that states, "SECURA agrees that this is a dispute over the amount to be paid for repairs to roof [*sic*] for covered wind damages and that appraisal is an appropriate venue to resolve our disagreement." (Dkt. 61-5; dkt. 65 ¶ 1.) The letter identified only one type of loss to be appraised: wind damage.

The parties then signed a Mutual Agreement Between Insured and Insurer for Submission To Appraisers (the "Agreement"), in which the parties agreed to submit CDC's claim to appraisal. The Agreement explains that "a disagreement exists as to if the wind damages that were sustained would warrant in full replacement of roof membrane as a result of a wind event loss on July 23rd, 2033" [*sic*]. (Dkt. 61-6 at 2.) Under the terms of the Agreement, each party was required to select an appraiser, who would, together, select an umpire for resolving award disputes between the appraisers. A decision agreed to by any two of the appraisers and the

---

[4] CDC's public adjuster testified that this wind and hail damage occurred simultaneously.

umpire would then be binding. The Agreement also states that "[w]e will not be taking the [*sic*] any hail damage into consideration under this appraisal." (*Id.*) The Agreement includes no express language stating that CDC waived its rights to further appraisals or to litigate its claims. Nor does the Agreement contain language limiting CDC to one appraisal per covered event.

CDC and SECURA each selected their own appraiser in accordance with the Agreement. CDC's appraiser and SECURA's appraiser could not agree on the cost of repair. While CDC's appraiser estimated that roof repairs would cost $1,890,128.37, SECURA's appraiser instead submitted a much smaller repair estimate of $140,025.68. An umpire was thus selected to assist in making the final decision. The umpire determined that roof repairs would cost $217,632.72. And although the Agreement specified that only wind damage would be taken into account during the appraisal, the appraisers and the umpire also estimated that repairs to rooftop units and the roof's protective silver coating, which each received non-wind damage, would cost an additional $110,231.50.

The appraisal concluded with an award of $217,632.82 to CDC, which CDC used to perform repairs on the roof. The $110,231.50 estimated for non-wind damage to rooftop units and the roof's protective silver coating was not included in this total. The award letter was signed by both the umpire and the appraiser for SECURA. It states that it is "the resulting appraisal for the subject building loss," but it lists only one type of "[p]eril": wind damage. (Dkt. 1-1 at 75.) In a sworn declaration, SECURA's appraiser now asserts that "[a]part from the excluded HVAC and silver coating items, the appraisal panel's objective was to determine the amount necessary to return CDC's roof to its pre-loss condition." (Dkt. 54-2 at 3.) He also states, however, that it was the appraisal panel's "understanding that roof damage caused by hail, alone, was not within our purview." (*Id.*)

CDC filed this action with the Circuit Court of Cook County, Illinois on December 22, 2023, and SECURA timely removed this action to federal court on January 25, 2024. On August 26, 2024, the court dismissed Count I of CDC's complaint for failure to state a claim for wind damages, which the appraisal award explicitly covered. SECURA now moves for partial summary judgment on CDC's remaining Count II, a claim for non-wind damages. SECURA asks the court to find that, other than repairs to certain rooftop units (*e.g.*, HVAC units) and reapplication of the roof's protective coating, the signed appraisal award is the final award with respect to the storm event.

## <u>LEGAL STANDARD</u>

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the burden of establishing that there is no genuine dispute of material fact. *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Whitaker* v. *Dempsey*, 144 F.4th 908, 916 (7th Cir. 2025) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, the court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *Daugherty* v. *Page*, 906 F.3d 606, 609 (7th Cir. 2018).

## <u>ANALYSIS</u>

SECURA's sole argument in favor of summary judgment is that the doctrine of accord and satisfaction precludes CDC's recovery for non-wind damages.

Accord and satisfaction applies where there is "(1) a *bona fide* dispute, (2) an unliquidated sum, (3) consideration, (4) a shared and mutual intent to compromise the claim, and (5) execution of the agreement." *Saichek* v. *Lupa*, 787 N.E.2d 827, 832 (Ill. 2003) (citing *Solomon* v. *Am. Nat'l Bank & Tr. Co.*, 612 N.E.2d 3, 5 (Ill. 1993)). It permits parties to discharge an honestly disputed claim by agreement. *Doyle's Constr. & Remodeling, Inc.* v. *Wendy's Int'l, Inc.*, 144 F. Supp. 2d 969, 976 (N.D. Ill. 2001). Following accord and satisfaction, further recovery based on the discharged claim is precluded. *See id.* The doctrine derives from contract law: the accord is the agreement between the parties, and the satisfaction is its performance. *Saichek*, 787 N.E.2d at 832 (citations omitted). Due to the contractual nature of accord and satisfaction, "the intent of the parties is of central importance." *Id.* (citing *Solomon*, 612 N.E.2d at 5). The party asserting the defense of accord and satisfaction has the burden of showing the parties' intent. *Ferguson* v. *Ferguson*, 495 N.E.2d 683, 684 (Ill. App. Ct. 2d Dist. 1986).

At first glance, SECURA appears to have set forth the requirements for an accord and satisfaction defense. As SECURA argues, the parties had a *bona fide* dispute as to the damage to the roof during the storm event. The parties then agreed to submit their dispute to the appraisal panel. This constituted an accord. When the appraisal panel subsequently awarded $217,632.82 to CDC, which CDC accepted, a satisfaction of the disputed claim resulted. Therefore, as SECURA maintains, CDC is precluded from further recovery for the storm event based on the doctrine of accord and satisfaction.

This conclusion is based, however, on a superficial reading of the undisputed material facts in this case. The parties do not dispute that they agreed to submit to the appraisal process. Nor do they dispute that the appraisal process resulted in an award to CDC of $217,632.82. But the key question is *what* the parties agreed to have appraised.

To resolve this question and determine the intent of the parties, Illinois law requires courts to "examine the language of the relevant documents." *Solomon*, 612 N.E.2d at 5–6 (citing *Holman* v. *Simborg*, 504 N.E.2d 967, 969 (1987) (Ill. App. Ct. 1st Dist.)). The record shows that, after a storm struck the Property on July 23, 2022, CDC submitted a claim to SECURA for wind and hail damage to the roof of the Property. SECURA then tendered a check to CDC for only non-hail damage to the roof, whereupon CDC demanded appraisal pursuant to the Policy. Nothing in the Policy limited CDC to one appraisal per covered event. SECURA accepted that request for appraisal in a letter that described the dispute to be addressed as "a dispute over the amount to be paid for repairs to roof [*sic*] for covered wind damages." (Dkt. 61-5; dkt. 65 ¶ 1.) The signed Agreement by the parties to have CDC's claim appraised also described the underlying dispute as whether "wind damages that were sustained would warrant in full replacement of roof membrane as a result of a wind event loss" [*sic*]. (Dkt. 61-6 at 2.) The Agreement further specified that "[w]e will not be taking the [*sic*] any hail damage into consideration under this appraisal." (*Id.*) Like the Policy, nothing in the Agreement limited CDC to one appraisal per covered event. Following appraisal, CDC was awarded $217,632.82 for roof repairs in a signed appraisal award. That award only listed wind damage as the applicable peril.

There is one throughline in each of the aforementioned documents: wind damage. Nothing in the relevant documents explicitly provides that acceptance of the appraisal award would foreclose CDC's claim for non-wind damages. *Cf. McMahon Food Corp.* v. *Burger Dairy Co.*, No. 93 C 256, 1995 WL 86594, at *5 (N.D. Ill. Feb. 27, 1995) (citation omitted) ("Thus, unlike the present case, the debtor there explicitly provided that the acceptance of the tender would compromise the amount due for *all* services."), *aff'd,* 103 F.3d 1307 (7th Cir. 1996). Rather, taken together, the relevant documents indicate that the parties intended to limit the

appraisal to wind damage. As such, since neither the Policy nor the Agreement limited CDC to a single appraisal for the storm, no accord and satisfaction was effected by the appraisal as to non-wind damage.

SECURA attempts to avoid this conclusion by arguing that the appraisal panel did, in fact, consider non-wind damage during the appraisal process. Specifically, the appraisal panel determined that repairs to rooftop units and the roof's protective silver coating, which each received non-wind damage, would cost $110,231.50. The Agreement, however, did not authorize the appraisal panel to make this determination nor did the signed award letter include this amount. Based on a declaration submitted by SECURA's appraiser, the appraisal panel was also apparently aware that non-wind damage was outside of its purview. Regardless, for accord and satisfaction, it is not the intent of the appraiser, or the appraisal panel, that controls but rather the intent of the parties at the time of contracting. *See McMahon Food Corp.*, No. 93 C 256, 1995 WL 86594, at \*4–5. Here, undisputed evidence indicates that the parties intended to limit the appraisal process to wind damage.

It is also immaterial that CDC's public adjuster earlier found that wind and hail each independently caused enough damage to warrant a full roof replacement. In the end, the appraisal panel determined that full roof replacement was unnecessary to repair the wind damage from the storm event. Due to the binding nature of the appraisal process, this determination precludes further review of wind damage to the roof. *See Bailey* v. *Timpone*, 389 N.E.2d 1193, 1196 (Ill. 1979) ("When, as here, parties agree to have value affixed by an appraisal, they must abide by their own agreement.") (cleaned up) (quoting *Hirt* v. *Hervey*, 578 P.2d 624, 626 (Ariz. Ct. App. 1978)). This finding, however, cannot be extrapolated to non-wind damage, which the parties did not agree to have appraised. After all, SECURA's own independent adjuster, Mozwecz, found

widespread hail damage to the roof that varied in location and type from the wind damage, which was observed on one corner of the roof. CDC's public adjuster similarly found that hail and wind each damaged the roof in different ways, with hail damage appearing in multiple spots across the roof.

What matters for purposes of accord and satisfaction is what the parties agreed on. *See Holman*, 504 N.E.2d at 971 ("[T]he satisfaction to which the plaintiff is entitled is the one agreed upon by the parties."). Here, the documentary evidence indicates that the parties agreed to an appraisal of wind damage. As such, even if the court presumes that SECURA intended the appraisal award to cover all damage related to the storm, it cannot be presumed based on the undisputed evidence that CDC understood the award to compromise its claims regarding non-wind damage.[5] This forecloses application of the doctrine of accord and satisfaction to this case.

## **CONCLUSION AND ORDER**

For the foregoing reasons, the court denies SECURA's motion for partial summary judgment. A status hearing is set for May 6, 2026 at 9:30 a.m. in courtroom 2201.

Date: April 20, 2026

U.S. District Judge Joan H. Lefkow

---

[5] SECURA relies on *Courtyards at Prairie Fields Condo. Ass'n* v. *W. Bend Mut. Ins. Co.*, No. 1:22-CV-04854, 2023 WL 6198818 (N.D. Ill. Sept. 22, 2023) to argue that CDC is attempting to subvert the binding appraisal process. This decision is inapposite. Nothing in *Courtyards at Prairie Fields Condo. Ass'n* indicates that the parties had agreed to limit their appraisal of damage caused by a hail and wind storm to only wind damage.